**Winfred Louis JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 18326.

Court of Civil Appeals of Texas, Fort Worth.

June 12, 1980.

Lee Ann Dauphinot, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Joe C. Lockhart, Asst. Dist. Atty., Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

The State of Texas has moved to dismiss on the ground that the appeal became moot because Winfred Louis Jones was released from the Wichita Falls State Hospital before it was heard. We overrule this motion.

This is an appeal of an order of the County Court at Law Number Two of Tarrant County, Texas, by which Winfred Louis Jones was temporarily and involuntarily committed to a mental hospital pursuant to sec. 38(b) of the Texas Mental Health Code. Tex.Rev.Civ.Stat.Ann. art. 5547–38(b) (1958). Jones' son, Kenneth, filed an application for the temporary commitment. After a hearing on January 16, 1980, the trial court rendered a judgment of temporary commitment and a writ of commitment was issued. Jones was admitted to the Wichita Falls State Hospital on January 17, 1980.

We affirm.

On January 22, 1980, the trial court granted Jones' motion to stay proceedings and to release him from custody pending appeal. However, because of the inability of Jones' counsel to make arrangements for his care during pendency of the appeal, he remained in the Wichita Falls State Hospital until his discharge on April 15, 1980. Jones perfected his appeal to this court and filed a transcript on January 31, 1980. On April 21, 1980 the state filed this motion to dismiss Jones' appeal claiming it was moot in view of his release from the state hospital on April 15.

In *Hollifield v. State*, 545 S.W.2d 267 (Tex.Civ.App.—Fort Worth 1976, no writ), this court dismissed an appeal of a temporary involuntary commitment as moot because the appellant was discharged from the hospital while the appeal was pending. In dismissing that cause we concluded that all previous orders, including the commitment itself, should be set aside. At that time we were not disposed to differ or qualify the decision of the court in *In Re Ivey*, 534 S.W.2d 163 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.). *Ivey* recognized two exceptions to the general rule of mootness: (1) where the controversy is capable of repetition yet evading review; *Southern P. Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); and (2) the collateral consequences or stigma exception; *In Re Ballay*, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973). However, the court in *Ivey* decided that no good reason existed for the application of either of these exceptions to a situation where an appellant is discharged from a hospital while the appeal of the order of temporary involuntary commitment is pending.

In a recent decision the court of civil appeals in *Lodge v. State*, 597 S.W.2d 773

(Tex.Civ.App.—San Antonio, 1980) disagreed with *Ivey* and *Hollifield.* The court in *Lodge* concluded that the possibility of repetition of involuntary commitments for periods too short to permit appellate review cannot be dismissed as being too remote to be considered as an exception to the general mootness rule. It also stated that the stigma and adverse consequences flowing from a judicial determination of mental illness are well known, and often barely distinguishable from the collateral consequences flowing from a criminal conviction or an adjudication that a minor is a delinquent.

The instant case and the opinion in *Lodge* have caused us to reexamine whether either of these two exceptions applies to this situation. We agree with the analysis of the court in *Lodge* and its application of the Texas Supreme Court's decision in *Carrillo v. State,* 480 S.W.2d 612 (Tex.1972). Specifically, we find persuasive the fact that pursuant to Tex.Rev.Civ.Stat.Ann. art. 5547–40 (Supp.1980) an order of temporary commitment is a prerequisite to a commitment for an indefinite period of time. Article 5547–40 provides as follows:

Art. 5547–40. Prerequisite to commitment

"No person may be committed to a mental hospital for an indefinite period unless he has been under observation and/or treatment in a mental hospital for at least sixty (60) days pursuant to an Order of Temporary Hospitalization entered within the twelve (12) months immediately preceding the filing of the Petition or unless he has been under observation and/or treatment in a mental hospital under an Order entered pursuant to Section 5 of Article 46.02, Code of Criminal Procedure, 1965, for at least sixty (60) days within the twelve (12) months immediately preceding the date of the indefinite commitment hearing."

■ Certainly the requirement of an order of temporary commitment within twelve months of the filing of a petition for an indefinite commitment falls within the purview of the collateral consequences or stigma exception to the mootness rule. The court in *Ivey* concluded that because the proper action, upon a determination that an appeal is moot, is the reversal of the lower court judgment and dismissal of the cause, any stigma would be as effectively erased as a reversal of the trial court's judgment due to procedural error. We disagree.

■ Assuming that a dismissal of an appeal of an order of temporary involuntary commitment together with a reversal of the trial court's order removes all stigma, Jones points out in his brief that there can be no involuntary commitments for an indefinite period of time unless such commitments are ordered before the patient is discharged from a temporary commitment, or unless there is no appeal from the order of temporary commitment. We cannot agree that this is the result envisioned or intended by the legislature by its enactment of Article 5547–40. For this reason we disagree that reversal of a trial court's order of temporary commitment effectively erases the stigma of an involuntary commitment under these circumstances.

■ We find application of Article 5547–40 analogous to enhancement of penalties because of prior convictions in criminal cases pursuant to Tex.Penal Code Ann. sec. 12.41–.42 (1974). The Texas Court of Criminal Appeals has held that a voluntary satisfaction of a judgment in a criminal case involving a minor misdemeanor renders an appeal of the conviction moot despite minor collateral consequences. *Fouke v. State,* 529 S.W.2d 772 (Tex.Cr.App.1975). However, where the collateral consequences are not minimal, as in driving while intoxicated or felony cases, appeals of such convictions are not rendered moot by satisfaction of the judgment, especially if the satisfaction is involuntary, or by the grant of a writ of habeas corpus. *Ex Parte Burt,* 499 S.W.2d 109 (Tex.Cr.App.1973), and *Cody v. State,* 548 S.W.2d 401 (Tex.Cr.App.1977). In our view the eligibility for an indefinite involuntary commitment resulting from an order of temporary commitment is at least as important as the collateral consequence of enhancement of penalties because of prior convictions in criminal cases.

■ Jones asserts by his first point of error that the court erred in trying the case because it did not appoint an attorney ad litem until twenty-four hours before the hearing resulting in there not being adequate time to prepare a defense. This point is overruled.

The record shows that when the case was called for trial Jones' attorney did not file a motion for continuance or orally request a continuance, but instead announced ready for trial and proceeded to trial. This point, being raised for the first time on motion for new trial, was waived. *Williams v. Humble Oil & Refining Co.*, 139 S.W.2d 346 (Tex. Civ.App.—El Paso 1940, writ dism'd, Judgm. Cor.).

Jones asserts by his second, third and fifth points of error there was no evidence or insufficient evidence to support the judgment of the trial court and the State did not sustain its burden of proof.

■ The evidence adduced through Jones' wife, his son and a medical doctor show that Jones had threatened to kill his wife, kept a loaded rifle at the door, fired shots, pushed his wife to the ground, was watching for intruders and raking the ground to detect tracks, stayed up all night with loaded guns, going outside constantly to check for prowlers, not having his clothes off for several weeks, hearing voices which his wife said did not exist, claiming a gang was coming around his house every night, also an allegation denied by his wife. His psychiatrist testified that he had been sitting in the courtroom, during this trial had heard the testimony of the wife and son; and had examined and interrogated Jones prior to trial. He diagnosed the patient as being a paranoid schizophrenic and in need of hospitalization, particularly in light of the threats to kill his wife, his assaults on his wife, the keeping and firing of guns, his condition was long-standing, and his previous stay and escape from a psychopathic hospital, that he is potentially dangerous. He had delusions and could not function in society.

The extensive lay testimony coupled with the testimony of a qualified psychiatrist supports the judgment. These points of error are overruled.

■ Jones asserts by his fourth point of error in that the court failed to take judicial notice of the effect of morphine on the human mind. Normally, courts would not take judicial knowledge of the effect of this drug on any one individual. Additionally, the doctor testified that he had had Jones withdraw from morphine over an extended period of time and that the use of morphine did not cause his problems.

Jones also claims error in that the State did not meet its burden of proof. This point is overruled for all of the reasons stated above.

By its sixth and seventh points of error Jones asserts error because the findings of the court were inconsistent and contradictory and the court heard unsworn testimony.

■ At the conclusion of trial the court held a discussion off the record with the court liaison from Trinity Valley Mental Health and Mental Retardation Authority to determine, whether there was a program available for home visitation or some kind of out-patient care. The psychiatrist admitted that such a program existed but stated, in keeping with his opinion, that it would be unsuitable for a man in appellant's condition. The court then advised the attorneys and parties of the conversation held in the courtroom but off the record, and further advised the attorneys that they had the right and opportunity to question the persons with whom he had talked off the record. Each declined to do so. If any error was committed in this respect, it was waived.

The court then signed an order committing Jones to the Wichita Falls State Hospital for a commitment of not less than ninety days.

■ The court, apparently hopeful that someone would look after the patient, protect him and the public, then signed an order, under authority of section 39c of the Texas Mental Health Code authorizing Jones to be released from the State Hospi-

tal to be treated in a program supervised by the Trinity Valley Mental Health and Mental Retardation Authority. The orders are not necessarily contradictory. Apparently the court as a precautionary measure to protect patient and public, ordered the patient committed but did give him a chance to be treated in a private program.

Although the record is silent as to what occurred, during oral submission the parties agreed that no one would undertake the responsibility of his care. It then became necessary for him to be confined to the Wichita Falls State Hospital. These points of error are overruled.

We affirm.

MASSEY, C. J., dissents.

MASSEY, Chief Justice, dissenting.

I respectfully dissent.

I agree with the state's claim that our decision on its motion to dismiss is controlled by the court of civil appeals' opinion in *In Re Ivey*, 534 S.W.2d 163 (Tex.Civ.App. —Austin 1976, writ ref'd n.r.e.), which this court followed in *Hollifield v. State*, 545 S.W.2d 267 (Tex.Civ.App.—Fort Worth 1976, no writ). In my view the rule that upon a determination that an appeal is moot the judgment of the lower court is reversed and the cause is dismissed protects the litigants against any collateral consequences.

After thoroughly reviewing this case and comparing it to *Ivey* and *Hollifield*, I find no basis for distinction which would alter or affect the disposition of this motion. I would grant the state's motion to dismiss, reverse the judgment of the trial court, and dismiss this cause.