

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

November 9, 1990

Honorable Garry Mauro          Opinion No. JM-1242
Commissioner
General Land Office            Re: Constitutionality of delega-
Stephen F. Austin Bldg.        tion of authority to General 1700
N. Congress Ave.               Land Office in article 5414a-2,
Austin, Texas  78701           V.T.C.S., to select a tract of
                               state-owned land for placement in
                               the permanent school fund in
                               "exchange" for a tract to be
                               patented out under the bill's
                               provisions (RQ-2059)

Dear Commissioner Mauro:

You ask about the constitutionality and scope of the authority of the General Land Office under article 5414a-2, V.T.C.S. Acts 1989, 71st Leg., ch. 725, at 3276.

Article 5414a-2 provides for the issuance by the General Land Office of patents to certain state permanent school fund lands to persons who would have met the requirements for obtaining such patents under the now expired provisions of article VII, section 4A, of the Texas Constitution, except that their filing of the documents required under the latter provisions was not timely.

Article VII, section 4A, which was adopted November 3, 1981, provided for the issuance of a patent to a tract of permanent school fund land by the commissioner of the General Land Office to a person who had "held the land under color of title, the chain of which dates from at least as early as January 1, 1932," if there had been a recorded deed to the person or his predecessors on file for 50 years preceding November 15, 1981, and if the person or his predecessors had paid taxes on the land for such 50 year period. Id. § 4A(a). See generally Attorney General Opinions JM-907 (1988); JM-364 (1985). Subsection (d) of section 4A required the applicant for the patent to submit the necessary documents to the School Land Board within five years of the effective date of the section. Section 4A expired January 1, 1990. Id. § 4A(f).

Article 5414a-2 attempts, in effect, to extend the time within which persons may obtain patents to permanent school fund land under the now expired provisions of article VII, section 4A. Article 5414a-2 took effect September 1, 1989, and expires on September 1, 1991. Id. §§ 7, 8.

Clearly, if amendment of the constitution was necessary in order to authorize the General Land Office to issue the patents which were the subject of article VII, section 4A, the legislature cannot, once the deadline for obtaining a patent under the amendment has passed and the amendment has expired, extend by means of a statute the time during which such patents may be obtained, unless other provisions of the statute overcome the constitutional hurdles which necessitated amendment of the constitution in the first place. The analysis of article VII, section 4A, by the Legislative Council at the time it was proposed states that "[t]he attorney general of Texas advises that a constitutional amendment is necessary to allow the state to pass good title to these individuals without additional compensation," referencing Attorney General Opinion H-881 (1976). That opinion had concluded that an act granting school fund land to a city without compensation violated sections 2, 4, and 5 of article VII, which "render the Legislature powerless to make a free grant of school lands." Id.; see Texas Legislative Council, Analyses of Proposed Constidtutional Amendments appearing on the November 3, 1981, Ballot, Information Report No. 81-3, September 1981.

In addition to providing for the issuance of patents to persons who would have, but for untimely filing, been entitled to them under article VII, section 4A, article 5414a-2 -- evidently in an attempt to meet possible constitutional objections -- provides in section 5 that the applicant must pay $10 per acre to the commissioner of the General Land Office prior to the issuance of the patent to the land, and in section 4 that the General Land Office shall select and place in the school fund, in "exchange" for the land to be patented out, another tract of non-school fund state-owned land of the same value. Section 6 authorizes the General Land Office to adopt rules to implement the act.

You specifically question the constitutional adequacy of the $10 per acre payment under section 5. You also ask whether the General Land Office may under section 4 select another tract of state-owned land and place it in the school land fund in "exchange" for the tract patented out over the

objections of the state agency which possesses and occupies the property.

Having reviewed the provisions of article 5414a-2, together with other provisions of law regarding the treatment of state-owned property, we conclude that the very lack of legislative guidance in section 4 of the bill as to how the General Land Office is to select another tract of state-owned land for placement in the school land fund in "exchange" for the tract to be patented out renders this attempted delegation of authority to the General Land Office constitutionally invalid. It is further our opinion that the provisions of section 4 are so intertwined with the remaining provisions of article 5414a-2 that the constitutional infirmity of that portion of the bill renders the entire bill invalid. We thus do not think it necessary to reach your question as to the constitutional adequacy of the $10 per acre payment under section 5. See generally Attorney General Opinion V-987 (1950) (act's provision for purchase of abandoned river and stream beds by adjacent property owners for $10 per acre valid, as the determination of the adequacy of consideration for state-owned land is a political matter exclusively within the province of the legislature).

Section 4 of article 5414a-2 provides:

> (a) On approval of an application, the General Land Office shall identify a tract of state-owned land not dedicated to the permanent school fund that has the same value as the tract for which a patent is requested and shall exchange that state-owned tract for the tract for which the patent is requested according to procedures established for that purpose by the land office.

> (b) General Land Office appraisers must determine the value of each tract before an exchange of land authorized by this Act may occur.

> (c) The School Land Board must approve an exchange of land authorized by this Act. Before approving an exchange, the board must make a finding that no loss to the permanent school fund will occur as a result of the exchange.

> (d)  An exchange of land authorized by this Act is not subject to the requirements of Section 31.159, Natural Resources Code.

In section 4, the legislature has attempted to delegate broad authority to the land office to select a tract of state-owned land for placement in the school land fund in "exchange" for a tract of school land to be patented out to a person qualifying under other provisions of the bill. Although article II, section 1, of the Texas Constitution, the "separation of powers" provision, reposes all legislative power in the legislature, courts have upheld the power of the legislature to delegate to state agencies the authority to promulgate rules, regulations, and procedures necessary to carry out their statutory duties. See Trapp v. Shell Oil Co., 198 S.W.2d 424, 438 (Tex. 1946); Housing Auth. of the City of Dallas v. Higginbotham, 143 S.W.2d 79, 87 (Tex. 1940).

However, the legislature may not delegate to an agency "arbitrary, uncontrolled, and unreviewable discretion." State v. Society for Friendless Children, 102 S.W.2d 318 (Tex. Civ. App. - Austin 1937), overruled on other grounds 111 S.W.2d 1075 (Tex. 1938). Generally, a legislative delegation of authority must be accompanied by standards or guidelines for the performance of the duties delegated in order to be valid. Higginbotham, supra; Med-Safe, Inc. v. State, 752 S.W.2d 638 (Tex. App. - Houston [1st Dist.] 1988, no writ); In re Johnson, 554 S.W.2d 775 (Tex. Civ. App. - Corpus Christi 1977), parties' writs of error respectively ref'd n.r.e and dism'd w.o.j. 569 S.W.2d 882 (Tex. 1978); Oxford v. Hill, 558 S.W.2d 557 (Tex. Civ. App. - Austin 1977, writ ref'd); see also Attorney General Opinion JM-1134 (1990) (Texas Racing Act's attempted delegation of authority to Texas Racing Commission to regulate racetracks that do not allow pari-mutuel betting invalid for lack of standards).

The authority of the state to allocate state land to its agencies and of state agencies to convey this property to others is discussed in Attorney General Opinion JM-242 (1984):

> The disposition of state-owned land is a matter over which the legislature has exclusive control and the power of an agency of the state to convey state property may be exercised only under the legislature's authorization. See Lorino v. Crawford

Packing Co., 175 S.W.2d 410, 414 (Tex. 1943); Conley v. Daughters of the Republic, 156 S.W. 197, 200 (Tex. 1913); Attorney General Opinions JM-149 (1984); MW-62 (1979); C-207 (1964); V-878 (1949). The terms of legislative authorization for the conveyance of land must be strictly complied with. See State v. Easley, 404 S.W.2d 296 (Tex. 1966); Wilson v. County of Calhoun, 489 S.W.2d 393 (Tex. Civ. App. - Corpus Christi 1972, writ ref'd n.r.e.); Attorney General Opinions JM-149 (1984); MW-62 (1979). In Conley v. Daughters of the Republic, the Texas Supreme Court said that the legislature

> has in general 'the same rights and powers in respect to property as an individual. It may acquire property, real or personal, by conveyance, will, or otherwise, and hold or dispose of the same or apply it to any purpose, public or private, as it sees fit. The power of the state in respect to its property rights is vested in the Legislature, and the Legislature alone can exercise the power necessary to the enjoyment and protection of those rights, by the enactment of statutes for that purpose. . . .'

Id. at 200.

The legislature has generally adopted a specific statute granting a particular agency the use of a particular tract of land; in addition, the grant of a right to reconvey state land has been express, and subject to conditions. See, e.g., V.T.C.S. art. 5547-205 (as added by Acts 1987, 70th Leg., ch. 956, § 5.01, at 3217); Educ. Code §§ 65.39, 67.23, 67.51, 85.25; Attorney General Opinions MW-62 (1979); H-1158 (1978). State agencies and universities have also acquired land by eminent domain, through purchase, or by donation, and some of these acquisitions are subject to conditions as to use of the land imposed by statute or the donor. See, e.g., Educ. Code §§ 65.33, 65.36, 69.21. The general language of article 5414a-2 is, in our opinion, insufficient to alter the terms of specific statutes granting land for the use of an agency, to lift conditions placed on land acquired by state agencies, or to authorize any state agency to transfer land to the General Land Office. We find no standards in section 4 of article 5414a-2 or

elsewhere in the bill to guide the General Land Office in its selection of a tract of state-owned land for placement in the fund. Article 5414a-2 attempts to delegate to the General Land Office the legislature's full discretion as to allocating land to state agencies and changing allocations it has already made. Accordingly, it is unconstitutional as violative of article II, section 1, of the Texas Constitution.

The lack of direction in article 5414a-2 as to the manner in which the General Land Office is to select a tract of state-owned land for placement in the permanent school fund is particularly troubling in view of the provisions of chapters 32 and 51 of the Natural Resources Code, under which land in the permanent school fund may be sold to the public by the General Land Office commissioner and the School Land Board without further legislative approval. We are unaware of any other provisions of Texas law granting an agency blanket authority to select and place state-owned property in the permanent school fund, thus rendering it subject to further disposition under chapters 32 and 51, or to dispose of the property outright, without regard to the use to which the property is being put by the agency possessing it. See Nat. Res. Code ch. 31, subch. E (as added by Acts 1985, 69th Leg., ch. 102, § 2, at 544) (recommendations and reports regarding disposition of state-owned property not being used or being substantially under-used).

We are not unmindful of the rule that in construing a statute a court should indulge every possible presumption in favor of its validity. Trapp v. Shell Oil Co., supra at 440. If a statute is susceptible of more than one construction a court will give to it the one which sustains its validity. State v. Shoppers World, 380 S.W.2d 107 (Tex. 1964). In an effort to so construe article 5414a-2, we have searched the Texas statutes for other provisions which might, if read together with article 5414a-2, provide sufficient limitations and guidance for the General Land Office in carrying out the directive of section 4 to "identify" another tract of state-owned land for "exchange" with the tract to be patented out of the school fund. We are unable however to find any such provisions.

Further, it is our opinion that the provisions of section 4 of article 5414a-2, delegating to the General Land Office authority to select a tract of state-owned land for placement in the permanent school fund, are so intermingled with the remaining provisions of the bill -- evidently having been placed there to avoid an unconstitutional

depletion of the permanent school fund -- that they cannot reasonably be severed from the remaining provisions of the bill. See Sharber v. Florence, 115 S.W.2d 604 (Tex. 1938). If the delegation provisions fail because of constitutional infirmity, as we have concluded they do, then the entire bill likewise fails. We thus need not address your question as to the adequacy of the $10 per acre compensation provided for in section 5 of the bill.

## S U M M A R Y

The delegation of authority to the General Land Office made in article 5414a-2, V.T.C.S., to select a tract of state-owned land for placement in the permanent school fund in "exchange" for a tract to be patented out under the provisions of the bill, is unconstitutional. The provisions of the bill unconstitutionally delegating such authority are so intermingled with the remaining portions of the bill that they cannot be severed. The entire bill is thus unconstitutional.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General