In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00015-CV


______________________________





IN THE ESTATE OF BOBBY WAYNE DILLARD, DECEASED





 


On Appeal from the County Court at Law


Rusk County, Texas


Trial Court No. 05-041-P




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 This is an appeal by Patricia F. Dillard from a will contest concerning the estate of her
husband, Bobby Wayne Dillard. There were four purported wills or codicils of the decedent
tendered for probate in the estate of Bobby Wayne Dillard as follows:

 1. A fill-in-the-blanks form will dated April 30, 2002. In this, the testator devised all
of his estate to his wife, Patricia F. Dillard. This will was witnessed by Joe Shumate and
Kimberly D. Jones; although the form will had a self-proving clause, no notary signed in the
provided space.

 2. A holographic will dated September 9, 2002. (1) The devisee in this will was Traci
Renee Dillard, the testator's daughter, provided she survived him in death by thirty days; if she did
not survive him for that period, then the contingent beneficiaries were his children who survived
him, in equal shares, with the provision that if none survived him, then his estate would pass to the
descendants of his children per stirpes and if there were none, then to his heirs at law.

 3. Another holographic will dated July 7, 2004, which purported to devise his entire
estate to his wife, Patricia, if she survived him in death by thirty days and naming his grandson,
Dalton Ray Dillard, as the contingent beneficiary in the event that she did not so survive.

 4. A codicil dated February 20, 2005, this being a codicil to the original will dated
April 30, 2002. This codicil changed the identity of the independent executor from the decedent's
brother, Richard Alan Dillard, to Elton Woodall and contained the following: "In all other respects
I ratify and confirm all of the provisions of my said will dated the 30th day of April, 2002." This
codicil was witnessed by two witnesses and contained a properly executed self-proving clause. 

 After a hearing on the merits before the court, the holographic will of September 9, 2002, was
admitted as the last will and testament of the decedent. 

 The trial court took two opportunities to provide windows into the facts as found by the trial
court and the legal reasoning employed. Before signing its order admitting the September 9, 2002,
will to probate, the trial court filed a document entitled "Final Order" which stated in pertinent parts
that: (1) the April 30, 2002, will was revoked by the will of September 9, 2002; (2) the September 9,
2002, will was valid because two disinterested parties testified that it was totally in the handwriting
of the decedent; (3) the proof of the July 7, 2004, will failed because, although it purported to be a
holographic will of the decedent, the handwriting of the decedent was not proven at trial by two
disinterested parties; and (4) the codicil dated February 20, 2005, was of no effect because it
attempted to resurrect the previously revoked will of April 30, 2002. The second opportunity was
the filing of findings of fact and conclusions of law, which differed somewhat from the first. The
primary differences in the two are the additional material statements in the findings of fact and
conclusions of law: (1) that the proof of the February 20, 2005, codicil failed because there was no
evidence presented that the decedent possessed the requisite mental capacity at the time the codicil
was signed, and (2) that the proof of the September 9, 2002, will failed because there were no
witnesses who testified that the signature on the will was that of the decedent.

 Patricia appeals, listing four points of error:

 1. A multifarious point, alleging that the trial court erred in its refusal to admit the
April 30, 2002, will and codicil dated February 20, 2005, or, alternatively, in failing to admit the
holographic will of July 7, 2004. (2)

 2. That the trial court erred in ruling that it is necessary to have two disinterested
witnesses in order to make the requisite proof to admit a holographic will to probate.

 3. That the court erred in ruling that once a will has been rescinded or revoked, it cannot
be revived by a subsequent codicil.

 4. That the court erred in its refusal to permit appellant to make a bill of testimony to
be proffered after the close of testimony.

NECESSITY OF PROOF FOR HOLOGRAPHIC WILL

 The wills of September 9, 2002, and July 7, 2004, were both holographic in nature and were
similar in format (though markedly different in effect). The Texas Probate Code is quite specific in
its requirements regarding the proof of the execution of a holographic will; Section 84(c) states as
follows:

 If not self-proved as provided in this Code, a will wholly in the handwriting of the
testator may be proved by two witnesses to his handwriting, which evidence may be
by sworn testimony or affidavit taken in open court, or, if such witnesses are
non-residents of the county or are residents who are unable to attend court, by
deposition, either written or oral, taken in the same manner and under the same rules
as depositions taken in other civil actions.


Tex. Prob. Code Ann. § 84(c) (Vernon Supp. 2008) (emphasis added).


 It should be noted that the statute requires two witnesses to identify the handwriting of the
testator; it does not require two disinterested witnesses. Therefore, the trial court's ruling that there
be two disinterested witnesses was in error; however, the trial court was correct that two witnesses
to the handwriting contained in such a will are required. Although the inclusion of the term
"disinterested" was in error, it did not impact the outcome of the determination under these fact
circumstances. 

 The holographic will of September 9, 2002, was proven by the testimony of Mary Rhodes
(Dillard) Lewis (who was present when the testator drafted the will) and by Richard Dillard (to
whom a duplicate original was delivered). However, only Patricia, the primary legatee, identified
the handwriting of the testator on the will dated July 7, 2004. Accordingly, of the two holographic
wills, only the September 9, 2002, will was met with the proper proof of handwriting as required by
the statute; the will of July 7, 2004, was properly excluded because there were not two witnesses to
the handwriting which comprised it.

 Accordingly, the appellant's point of error in complaining of the failure to admit the July 7,
2004, will to probate is overruled.

REFUSAL TO ADMIT CODICIL TO PROBATE

 The trial court ruled that once the will of April 30, 2002, had been revoked by previous wills,
it could not be revived, resuscitated, or resurrected by a subsequent codicil. That is not a correct
statement of the law. It has long been held that a properly executed and valid codicil which contains
a sufficient reference to a prior will operates as a re-publication of the will in so far as it is not altered
or revoked by the codicil; the will and codicil are then to be regarded as one instrument speaking
from the date of the codicil. Boyd v. Frost Nat'l Bank, 145 Tex. 206, 196 S.W.2d 497, 508 (1946). 
Going even further, most jurisdictions in which the question has arisen also hold that a properly
executed codicil validates a prior will which was inoperative or invalid because of defective
execution, lack of testamentary capacity, or undue influence. Hinson v. Hinson, 154 Tex. 561, 280
S.W.2d 731, 735 (1955).

 We are constrained, however, from saying that the refusal to admit the codicil to probate was
error in two respects: (1) The findings of fact and conclusions of law make a specific finding that
"No evidence was presented by proponent of Codicil as to Testator having mental capacity on
February 5, 2005, and therefore Testator was not mentally competent to make Codicil on February 5,
2005." (2) No point of error was raised concerning that finding. 

 "It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly
assigned error." Pat Baker Co. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998) (citing Allright, Inc. v.
Pearson, 735 S.W.2d 240, 240 (Tex. 1987); Tex. Nat'l Bank v. Karnes, 717 S.W.2d 901, 903 (Tex.
1986); Dep't of Human Res. v. Wininger, 657 S.W.2d 783, 784 (Tex. 1983)); see also San Jacinto
River Auth. v. Duke, 783 S.W.2d 209, 210 (Tex. 1990). 

 Although the record does reveal some evidence of the testator's testamentary capacity on the
date the codicil was signed, the blanket assertion of a total lack of such evidence as contained in the
findings of fact and conclusions of law is not the subject of any complaint raised on appeal by
Patricia. There has been no point of appeal regarding either the legal or factual sufficiency of the
evidence. While it is true that there are very limited exceptions to the constraint on the courts to
avoid unassigned errors, those exceptions are limited to matters of jurisdiction and fundamental
errors; this does not fall within those extraordinarily limited circumstances. In re B.L.D., 113
S.W.3d 340, 350 (Tex. 2003). Accordingly, we cannot consider the issue of the sufficiency of the
evidence. 

 The codicil of February 20, 2005, contained a self-proving clause in compliance with Section
84 of the Texas Probate Code. See Tex. Prob. Code Ann. § 84 (Vernon Supp. 2008). The next
inquiry regards the benefit provided to the proponent of such a will. Section 59(c) of the Probate
Code specifically addresses the issue in saying:

 A self-proved will may be admitted to probate without the testimony of any
subscribing witness, but otherwise it shall be treated no differently than a will not
self-proved. In particular and without limiting the generality of the foregoing, a
self-proved will may be contested, or revoked or amended by a codicil in exactly the
same fashion as a will not self-proved.


Tex. Prob. Code Ann. § 59(c) (Vernon 2003).

 Section 88 of the Probate Code sets out the proof necessary for the issuance of letters
testamentary or administration; under it, Section 88(b) provides that the proponent of a self-proved
will is excused from the necessity of providing evidence that at the time the will was signed, the
testator did not operate under the disabilities of a minor and was of sound mind, that the will was
executed with the formalities and solemnities required by law to make it a valid will, and that the
will had not be revoked. Tex. Prob. Code Ann. § 88 (Vernon 2003). However, this statute does
not shift the burden of proof of these matters (such as the competency of the testator to make a will)
in the face of a challenge by an opponent to the admission of the will to probate. Croucher v.
Croucher, 660 S.W.2d 55, 57 (Tex. 1983); Reynolds v. Park, 485 S.W.2d 807, 816 (Tex. Civ.
App.--Amarillo 1972, writ ref'd n.r.e.). Therefore, where the admission of a will to probate has been
contested on the basis of a lack of testamentary capacity, the burden remains on the proponent of the
will, even with a self-proven will, to prove testamentary capacity of the testator. The
uncomplained-of finding that there was no evidence of the requisite testamentary capacity of the
testator when the codicil was signed doomed its acceptance as the decedent's last will and testament. 
Therefore, due to a failure in the required proof of testamentary capacity, the codicil was rejected for
probate. The rejected codicil was the only possible means under these fact circumstances for the
revival of the April 30, 2002, will because the prior will had otherwise been revoked by the
holographic will dated September 9, 2002.

REFUSAL OF TRIAL COURT TO PERMIT THE MAKING OF A BILL OF EXCEPTIONS

 After both parties had closed their respective cases and the trial court announced from the
bench the gist of its rulings, Patricia sought permission of the court to reopen in order to call an
additional witness, one which dealt with the handwriting on the purported holographic will dated
July 7, 2004.

 Immediately following this request, the following exchange occurred:

 [COUNSEL FOR OPPONENT]: Your Honor, we object to that because
that was supposed to be part of his case-in-chief that he rested on.

 

 [COUNSEL FOR PATRICIA]: Yes, Your Honor. But she [referring to
the requested witness] is here, and I would like to offer her up on a bill. 

 

 THE COURT: Deny your request.

 

 [COUNSEL FOR PATRICIA]: Thank you, Your Honor. I'll file the
appropriate motion.


 As can be seen from this exchange, the record does not definitively show whether the trial
court intended to deny Patricia the ability to reopen the testimony, to deny the request to make a bill,
or both. 

 In a trial before the court, "When it clearly appears to be necessary to the due administration
of justice, the court may permit additional evidence to be offered at any time." Tex. R. Civ. P. 270
(emphasis added). As is obvious with the use of the word "may" in this rule, a trial court has wide
discretion to refuse to go outside the usual format of a trial and allow a reopening of a case after a
party has announced that it has closed. It has long been settled that after having rested his case, the
right of a party to reopen it and introduce additional evidence is a question addressed to the sound
discretion of the trial court. Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471, 476 (1945); Turner
v. Lone Star Indus., Inc., 733 S.W.2d 242, 245 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd
n.r.e.). Patricia not only had announced that she had closed her case and waited until after her
opponent had responded, she waited until after the trial court had made an oral pronouncement of
its ruling before asking for permission to reopen her presentation of evidence. 

 However, Patricia does not complain that the trial court erred in refusing to allow her to
reopen the case at that time. Rather, she complains that the court erred in refusing to allow her to
make a bill of the evidence that she intended to proffer if allowed to reopen. 

 The right exists to make bill of exceptions to preserve complaints regarding matters arising
at trial (see Tex. R. App. P. 33.1 and Tex. R. Evid. 103(b)) and there is no discretion afforded the
trial court in permitting it. Nevertheless, as pointed out above, at the time Patricia asked to be
permitted to make a bill of exceptions, the trial court had already announced its ruling from the
bench and it had exercised its discretion to refuse to allow Patricia to reopen her case. The trial had
been concluded. Accordingly, the trial court made no error in denying Patricia the right to make a
bill of exceptions. 

 We affirm the judgment of the trial court.




 Bailey C. Moseley

 Justice


Date Submitted: August 11, 2008

Date Decided: September 30, 2008

1. The date of September 6, 2002, is indicated at the top of this holographic will, but it is
signed and dated September 9, 2002, at the end of the document.
2. Although this point of error does not comply with briefing requirements, we construe it
liberally and deal with the issues presented. See Tex. R. App. P. 38.9.


 Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-224-CR%20Blumen%20v.%20State%20dismiss%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00224-CR

                                                ______________________________

 

 

                                DAVID JOHN BLUMEN, III,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 09F0218-102

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            David
John Blumen, III, has filed pro se a notice of appeal from his conviction of
possession of a controlled substance.  On
our review of the clerks record, we noted that the trial courts certification
of right of appeal stated that this was a negotiated plea agreement case and
that Blumen has no right of appeal.  

            Unless
a certification, showing that a defendant has the right of appeal, is in the
record, we must dismiss the appeal. 
See Tex. R. App. P. 25.2(d).  

            Because
the trial courts certification affirmatively shows Blumen has no right of
appeal, and because the record before us does not reflect that the
certification is incorrect, see Dears v. State, 154 S.W.3d 610,
615 (Tex. Crim. App. 2005), we must dismiss the appeal.

            We
dismiss the appeal for want of jurisdiction. 


 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          December
16, 2010

Date Decided:             December
17, 2010

 

Do Not Publish